IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:22-cr-00238-IM |
| v. | **OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL** |
| **JOSHAN ROHANI**, | |
| Defendant. | |

Gary Y. Sussman and Mira Chernick, Assistant United States Attorneys, and Natalie K. Wight, United States Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204.

Anna Belesiotis and Ryan Costello, Assistant Federal Public Defenders, 101 SW Main Street, Suite 1700, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

    Following a jury trial, Defendant Joshan Rohani was convicted on three counts of transportation of child pornography, one count of accessing with intent to view child pornography, and one count of possessing child pornography. ECF 157. Defendant now moves this Court for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal

Procedure. Defendant's Rule 29 Motion for Judgment of Acquittal ("Mot."), ECF 159. For the reasons set forth below, Defendant's Motion is DENIED.

## LEGAL STANDARDS

Federal Rule of Criminal Procedure 29 provides that a court, on the motion of a defendant, must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a), (c)(2). To determine whether the evidence was sufficient to support a criminal conviction, a court must "determine whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, a court must "presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts in favor of the prosecution." *Jackson*, 443 U.S. at 326.

## BACKGROUND

Defendant was charged in a second superseding indictment with one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) ("Count One"),[1] three counts of transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1), (b)(1) ("Counts Two through Four" or "Transportation Counts"), one count of accessing with intent to view child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2) ("Count Five"), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2) ("Count Six"). Second Superseding Indictment, ECF 97. A five-day jury trial took place from

---

[1] At trial, the Government charged Defendant with distribution of child pornography under an attempt theory in violation of 18 U.S.C. §§ 2252A(b)(1). *See* ECF 137, ECF 157.

PAGE 2 – OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL

December 2 to December 6, 2024. ECF 139, 145, 147, 152, 153. Before the case was submitted to the jury, Defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, which this Court denied. ECF 152. The jury acquitted Defendant on Count One, which alleged distributing child pornography, but found Defendant guilty on Counts Two through Six. ECF 157. Defendant now moves for a judgment of acquittal on those remaining counts.

The following evidence adduced at trial is relevant for the instant Motion. On May 24, 2022, agents executed a valid search of Defendant's residence and seized various electronic devices that contained images and videos of child pornography. Several of the seized devices contained the application Mega, an encrypted cloud storage and file-hosting service. On this application, the Defendant had copied and pasted links containing child pornography to a private encrypted chatroom, labeled "Me." This chatroom contained thirteen total users, each of which were registered under different names and email accounts, but all of which belonged to Defendant. Forensic examination of the phone's cache revealed that Defendant had opened at least one of the child pornography links from the "Me" chatroom using one of the Mega accounts that was a participant in the chatroom.

Separately, a seized iPhone contained several images of child pornography saved in the phone's cache in two folders. Witnesses at trial explained that child pornography files that were viewed on the phone from links opened on Mega were automatically saved into the two folders, indicating images had been viewed on the iPhone.

Finally, a seized laptop contained images and videos of child pornography that Defendant had saved in a subfolder that was located within a folder labeled with the name of Defendant's business.

PAGE 3 – OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL

DISCUSSION

This Court first considers Defendant's arguments for acquittal on the Transportation Counts as raised in his motion and concludes that there was sufficient evidence for a reasonable juror to find each element of transportation for Counts Two through Four. This Court then considers Defendant's arguments in support of his renewed motion for judgment of acquittal of all counts, as stated on the record at the close of trial and in his motion. Viewing the evidence in the light most favorable to the Government, this Court finds that the Government presented sufficient evidence for a reasonable juror to find Defendant guilty on all counts beyond a reasonable doubt.

**A. Transportation (Counts Two through Four)**

Defendant argues that the Government failed to present sufficient evidence that he transported child pornography to sustain the Transportation Counts. Mot., ECF 159 at 2. To prove the Transportation Counts, the Government presented evidence that Defendant copied links to child pornography files bearing names such as "Family Incest," and posted them into a Mega chatroom, called "Me." This chatroom included thirteen different user accounts with different names and passwords, although the evidence showed that each account was controlled by Defendant.

Defendant makes two related arguments. First, he argues that posting a link is not "transportation" within the meaning of the statute because he never transported the child pornography itself; the child pornography file "remained in the same location on the Mega server." Mot., ECF 159 at 3. Second, he argues that he could not have transported any child pornography by posting in the chatroom because he "did not send the material to another computer user or make it available to others." *Id.* at 3–4 (cleaned up).

The Government contends that it need not prove that Defendant sent the link to another person, and that copying and pasting the link to the chatroom is sufficient to show transportation within the meaning of the statute. Resp., ECF 160 at 4–7. This Court agrees with the Government and concludes that it presented sufficient evidence for a reasonable juror to find, beyond a reasonable doubt, that Defendant transported child pornography.

1. **The Links**

As a preliminary issue, no court appears to have considered when transporting a link to a file may be equivalent to transporting the file itself. Prior cases have instead involved the transportation of digital files, where the data of a file was transferred from one place to another. *See, e.g.*, *United States v. Siepman*, 107 F.4th 762, 766 (7th Cir. 2024) (files transported from one computer to another over a peer-to-peer file-sharing network); *United States v. Fall*, 955 F.3d 363, 374–75 (4th Cir. 2020) (files uploaded from personal computer to cloud server); *United States v. Wasson*, 847 F. App'x 523, 526 (10th Cir. 2021) (files transported through an email account).

By contrast, all of the files in this case remained on Mega's servers. Defendant shared a link to these files to the "Me" chatroom he created, which contained thirteen different user accounts—all of which were controlled by the Defendant. A link is an identifier that directs a user to the location of a file on a server. Although sharing a link is not necessarily equivalent to sharing a file, by clicking on the link, the recipient of the link can view the file online. The user does not necessarily download a file received via a link to his computer, but he is able to access the online file through the link.

Defendant argues that sharing a link cannot amount to transportation because the file itself "remained in the same location on the Mega server." Mot., ECF 159 at 3. This Court

disagrees because the mechanics of Mega links make sharing a link to the "Me" chatroom the equivalent of sharing the underlying content. The jury heard undisputed testimony from Inspector Peacock of the New Zealand Department of Internal Affairs that all content on Mega's servers is end-to-end encrypted, such that no one can view the content without a link to the file. A link to a Mega file contains a decryption key that allows the end user to view the file. Although there is no direct transfer of files when a user views a Mega file online, *cf. Siepman*, 107 F.4th at 766 (considering a peer-to-peer file-sharing network), under the specific factual circumstances of this case, this Court concludes that sharing an encrypted link to a pornographic file stored on Mega's server is functionally equivalent to sharing the file itself.

### 2. Definition of "Transport"

Having concluded that the links are equivalent to the child pornography files, this Court must next determine whether Defendant transported the links by copying and pasting them, effectively sending them into the "Me" chatroom. Interpreting a statute begins with looking at the text. *Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 837 (9th Cir. 2020). When, as here, "a statute does not define a term, we typically give the phrase its ordinary meaning." *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011). "When there is no indication that Congress intended a specific legal meaning for the term, the court may look to sources such as dictionaries for a definition." *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999); *see, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 127–28 (1998).

18 U.S.C. § 2252A(a)(1) criminalizes "[a]ny person who knowingly transports or ships using any means . . . including by computer or mails, any visual depiction" of "a minor engaging in sexually explicit conduct." The statute does not define the term "transport." *See* 18 U.S.C. § 2256; *Mohrbacher*, 182 F.3d at 1048. Accordingly, this Court looks to dictionary definitions to

PAGE 6 – OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL

determine the ordinary meaning. "Transport" means "to transfer or convey from one person or place to another," Webster's Third New International Dictionary, Unabridged (3d ed. 1961), "to carry, move, or convey from one place to another," Random House Webster's Unabridged Dictionary (2d ed. 2002), or to "take or carry (people or goods) from one place to another by means of a vehicle, aircraft, or ship," New Oxford American Dictionary (3d ed. 2010).

All of these definitions share a common element: to transport something, one must move it between two places or between two people. To sustain a conviction, the Government therefore must prove that Defendant transferred the child pornography between places or between people. This Court concludes that the Government has presented sufficient evidence to do so under both possible meanings of the word.

### 3. Transportation

The Government presented sufficient evidence to prove that Defendant conveyed the link to a different place. Defendant copied links containing child pornography from one place and posted them into a chatroom. This conduct, by itself, establishes the two places necessary to sustain a conviction for transportation. The links began in one place, whether in another chatroom or somewhere else on the internet. Defendant then transferred the links to a different place: the "Me" chatroom.

Although this Court agrees with the Government that it was not required to prove that Defendant transported the links to another person to sustain a conviction under 18 U.S.C. § 2252A(a)(1),[2] Defendant also arguably transported the links to different people by pasting the

---

[2] Absent from 18 U.S.C. § 2252A(a)(1) is any requirement that the child pornography be conveyed to another person. *See Mohrbacher*, 182 F.3d at 1049 n.8 (noting the transportation statute "does not appear to require that the defendant ship or transport the image to a third

PAGE 7 – OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL

links into a chatroom with several different participant accounts whose users could readily access the child pornography links. The evidence at trial showed that each member of the "Me" chatroom had a uniquely generated email address and password, but all belonged to Defendant. It would be reasonable to infer that the purpose of having multiple accounts was to allow Defendant to continue using Mega if any of his accounts were disabled for a violation of Mega's terms of service. In essence, while Defendant ultimately owned each of these accounts, it appeared on the application that the accounts in the chatroom belonged to different people. Further, each separate account, as a member of the "Me" chatroom, had direct access to the link containing child pornography. By posting the link from one Mega account to a chatroom with several other unique accounts, he effectively transferred the child pornography from one user to another. *See, e.g.*, *Wasson*, 847 F. App'x at 526.

Defendant relies on *United States v. Mohrbacher*, where the Ninth Circuit held that a defendant who had downloaded images from a website was "guilty of receiving or possessing" child pornography, but "not of shipping or transporting" it. 182 F.3d 1041, 1050 (9th Cir. 1999). The court stated, however, that the website operator, who was "primarily responsible for the images moving from the [website] to individuals' computers," could be prosecuted for transportation. *Id.* at 1049 n.9; *see also United States v. Brown*, 785 F.3d 1337, 1352 (9th Cir. 2015). Here, by taking the links from wherever he found them and posting them into the chatroom, Defendant was responsible for moving the links to a different place in order to make them more available. This Court concludes that this conduct is more analogous to the website operator than the defendant in *Mohrbacher*.

---

person); *Fall*, 955 F.3d at 374 ("Transportation . . . does not require conveyance to another person.").

PAGE 8 – OPINION AND ORDER DENYING DEFENDANT ROHANI'S MOTION FOR JUDGMENT OF ACQUITTAL

Finally, this Court notes that this interpretation of "transport" advances the statute's "object and policy." *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011) (quotation omitted); *see Mohrbacher*, 182 F.3d at 1049; *United States v. Cox*, 963 F.3d 915, 922 (9th Cir. 2020). The Ninth Circuit has construed this statute as having a "broad and general purpose of facilitating the prosecution of individuals who are involved with child pornography." *Mohrbacher*, 182 F.3d at 1049. Congress enacted it to "regulate (more accurately, exterminate) the entire child pornography market." *United States v. McCalla*, 545 F.3d 750, 755 (9th Cir. 2008). Congress's 2008 amendments, which expanded the jurisdictional coverage of the statute by replacing all instances of "in interstate" with "in or affecting interstate" commerce and clarifying that the Internet constitutes a means of interstate commerce, further evidences an object of facilitating the prosecution of child pornography crimes on the Internet. Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 103, 122 Stat. 4001, 4002 (2008). To find that Defendant's conduct—posting links to child pornography so that he could continue to access them from a different account—is not transportation would frustrate, rather than advance, the statute's objective.

For the reasons explained above, viewing the evidence in the light most favorable to the Government, this Court concludes that there was sufficient evidence for a reasonable juror to find each element of transportation for Counts Two through Four. This Court will not disturb the jury's verdict on those counts.

**B. Renewed Motion for Reasons Stated at Trial**

Defendant also renews his motion for judgment of acquittal based on the reasons stated on the record at the close of trial. Mot., ECF 159 at 2. As to Counts 2 through 4, Defendant argues the Government failed to prove each element beyond a reasonable doubt. As to Count 5,

Defendant argues that "the government failed to prove that Mr. Rohani had the requisite state of mind for criminal liability, especially considering the uncontroverted evidence of his alcohol intoxication during April 25, 2022 to May 23, 2022," and that "no rational juror could have found that there was sufficient evidence to find Mr. Rohani guilty of the requisite knowledge requirement for Count 5 beyond a reasonable doubt." *Id.* And as to Count 6, Defendant argues the Government failed to prove each element beyond a reasonable doubt.

The Government responds by pointing to the evidence from which a rational juror could find that the elements of each count were satisfied. Government's Response to Defendant's Motion for Judgment of Acquittal ("Resp."), ECF 160 at 2–4. The Court agrees that this evidence would be sufficient for a rational juror to find Defendant guilty on all Counts.

1. **Count Five**

For Count Five, accessing with intent to view child pornography, the Government points to evidence it presented at trial that Defendant viewed several files containing child pornography on multiple dates in April and May of 2022. The Government presented images of child pornography that were stored in the "thumbnailsV3" and "previewsV3" cache folders of his iPhone 13 Pro Max. Government witnesses explained that a file is saved to "thumbnailsV3" when a user views an image on a landing page for a link opened from the Mega application, and a file is saved to "previewsV3" when the user opens a specific file from Mega to view it individually in a larger format. The jury could reasonably conclude that the presence of these images in these cache folders meant that Defendant had viewed these images through the Mega application.

With respect to Defendant's argument that the Government failed to prove that Defendant accessed these materials knowingly because he was intoxicated, the Government points to

evidence from the testimony of Defendant's ex-girlfriend that Defendant typically would not start drinking until noon or later. *Id.* at 3. The Government introduced evidence to show that Defendant had viewed some of the images earlier in the morning. The Government also points out that, while both witnesses who testified about Defendant's alcohol use said that he drank heavily, they did not testify that he was so constantly and heavily intoxicated during the time periods he accessed child pornography that he could not form the intent to view it. *Id.*

This Court concludes that there was sufficient evidence for a rational juror to find each element of Count 5 beyond a reasonable doubt. As the Government points out, there was not conclusive evidence that Defendant was intoxicated every single time he accessed and viewed the child pornography. To the contrary, there was evidence that he likely was not, as the Government showed that Defendant viewed images early in the morning, and there was testimony that he typically began drinking around noon or later. To the extent that the jury believed there were conflicting inferences to draw from this testimony about Defendant's state of mind, this Court must presume that the jury resolved any conflicting inferences in favor of the prosecution. *Jackson*, 443 U.S. at 326. Accordingly, this Court concludes that a rational juror could infer from the evidence that Defendant knowingly accessed with intent to view child pornography from April 25, 2022, to May 23, 2022 as alleged in the indictment.

### 2. Count Six

For Count Six, possession of child pornography, the Government points to evidence it presented at trial that several images and videos of child pornography were found on a laptop and several external hard drives that agents recovered during a search of Defendant's home. The laptop contained several child pornography files in a user-created folder named "Boys and their Ds," which was saved in yet another folder with the title of Defendant's company. The

Government also presented evidence that other subfolders saved to the same company folder contained images and videos of Defendant. A rational juror could infer from these pieces of evidence, in addition to the other evidence of child pornography contained in other devices obtained from Defendant's residence, that Defendant knowingly possessed child pornography and tried to disguise the content by saving the files in a folder with his business's name.

## CONCLUSION

For the reasons set forth above, Defendant's Renewed Rule 29 Motion, ECF 159, is DENIED.

**IT IS SO ORDERED.**

DATED this 31st day of January, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge